UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05CV226-3-V

| TROY ALLEN LINGLE, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | **O R D E R** |
|  | ) |  |
| DAVID MITCHELL, Supt., | ) |  |
|  | ) |  |
| Respondent. | ) |  |

**THIS MATTER** is before the Court upon Petitioner Troy Allen Lingle's (hereinafter "Petitioner") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Document No. 1.) Also before the Court is the State's Motion for Summary Judgment (Document No. 3), the Petitioner's Response to the State's Motion for Summary Judgment (Document No. 8); and the State's reply Brief (Document No. 9.) For the reasons stated herein, Petitioner's Petitioner for Writ of Habeas Corpus will be denied and dismissed.

### I. Factual and Procedural Background

A review of the record reveals that on November 30, 1989 Petitioner pled guilty to two counts of first-degree kidnapping and seven counts of second-degree kidnapping and was sentenced to presumptive sentences totaling eighty-seven years. Petitioner noticed an appeal to the North Carolina Court of Appeals, which was dismissed, and filed a petition for writ of certiorari with that court, which was denied.

On November 7, 2002, Petitioner, through counsel, filed his first motion for appropriate relief

("MAR"). Following a hearing on October 8, 2003, at which the State stipulated that Petitioner was entitled to relief based upon one of the claims in his MAR, Petitioner was granted a new trial. Petitioner entered an Alford[1] plea of guilty to two counts of first-degree kidnapping and pled guilty to seven counts of second-degree kidnapping pursuant to an agreement with the State. Petitioner agreed to leave the disposition of his sentence to court's discretion. During Petitioner's sentencing hearing, the State attempted to introduce a letter written by Petitioner's ex-wife.[2] (Sentencing Transcript at 43.) Petitioner's counsel objected and the court sustained the objection. (Sentencing Transcript at 43-45.) After several character witnesses testified on his behalf, Petitioner testified and the State cross-examined him, without objection, about some matters referenced in his ex-wife's letter. (Sentencing Transcript at 125-141.) After Petitioner testified, the State again moved to introduce the letter, arguing that its content was contrary to Petitioner's testimony. (Sentencing Transcript at 141.) Over objection from Petitioner, the court noted that it would "look at [the letter] for the purpose of impeaching what [Petitioner] said on the stand," and read the letter. (Sentencing Transcript at 142.) The court sentenced Petitioner, without comment concerning the letter, to two active, presumptive terms of twelve years for the first-degree kidnapping counts and seven active, presumptive terms of nine years for the second-degree kidnapping counts.[3] Petitioner's sentences

---

[1] North Carolina v. Alford, 400 U.S. 25 (1970) (concluding that "even if [defendant] is unwilling or unable to admit his participation in the acts constituting the crime" he can plead guilty).

[2] Petitioner's ex-wife was not present at Petitioner's sentencing hearing. Indeed, there was testimony that she was afraid to come to court and testify.

[3] Although Petitioner avers in his memorandum attached to his § 2254 petition that Judge Doughton read the letter and immediately sentenced Petitioner, the Court has reviewed the entire Sentencing Transcript and notes that the transcript does not reflect this course of events. Instead, the transcript reflects that after Judge Doughton read the letter, he allowed counsel to make their

were to run consecutively and totaled eighty-seven years. (Sentencing Transcript at 155-158.) Petitioner filed, but withdrew, an appeal to the North Carolina Court of Appeals.

On October 20, 2003, Petitioner, through counsel, filed a second MAR in superior court in which he alleged that the introduction of the letter, written by his ex-wife, to impeach his own testimony at his sentencing hearing violated his rights to due process and confrontation as guaranteed by the United States and North Carolina Constitutions. Petitioner's MAR was denied on January 26, 2005. On April 22, 2005 Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals which was denied on May 10, 2005. Petitioner, through counsel, filed the instant petition on July 15, 2005 alleging that he "was denied his Constitutional rights by the admission of an unsigned, unsworn letter, over objection, containing highly prejudicial allegations against petitioner." (Petition at 6.)

## II. Standard of Review

Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication; (1) "resulted in a decision that was contrary to, or involved as unreasonable application of, clearly established Federal laws, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ."

Id. (Internal citations omitted).

---

arguments which consisted of several pages of text before he pronounced his sentence.

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

Finally, the applicable standard of review is to be applied to "all claims 'adjudicated on the merits," that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.2d 445, 455 (4th Cir. 1999).

### III. Analysis

Petitioner claims that he was denied his Constitutional rights by the admission of a letter during his sentencing hearing written by his ex-wife. "State Court trial rulings regarding the admission and exclusion of evidence are cognizable in federal habeas corpus review only to the extent that they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair, thereby violating the Due Process Clause of the Fourteenth Amendment." Howard v. Moore, 131 F.3d 399, 415 n. 18 (4th Cir. 1997); see also Estelle v. McGuire, 502 U.S. 62, 72 (1991) ("The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'") (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

4

Here, although the State argues that Petitioner "fail[ed] to assert that any specific constitutional provision was violated by the admission of Mrs. Lingle's letter," (Brief in Support of Summary Judgment at 7), Petitioner seems to be arguing that his right to confront witnesses against him was violated by the introduction of the letter written by his ex-wife. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him." Crawford v. Washington, 541 U.S. 36, 42 (2004). However, the Supreme Court has not held that sentencing proceedings are "criminal prosecutions" for Sixth Amendment purposes. See United States v. Johnson, 935 F.2d 47, 50 (4th Cir. 1991). As such, there is no clearly established federal law that the Confrontation Clause applies in sentencing proceedings. See United States v. Roche, 415 F.3d 614, 618 (7th Cir. 2005) ("[W]itnesses providing information to the court after guilt is established are not accusers within the meaning of the confrontation clause."); United States v. Luciano, 414 F.3d 174, 179 (1st Cir. 2005) ("[T]here is no Sixth Amendment Confrontation Clause right at sentencing."); United States v. Martinez, 413 F.3d 239, 243 (2d Cir. 2005) (reaffirming prior holdings that the constitutional right of confrontation does not bar the admission of hearsay testimony at sentencing proceedings); United States v. Higgs, 353 F.3d 281, 324 (4th Cir. 2003) ("It is far from clear that the Confrontation Clause applies to capital sentencing proceedings."); United States v. Silverman, 976 F.2d 1502, 1514 (6th Cir. 1992) (en banc) (discussing the "inapplicability of the Confrontation Clause to the sentencing procedure"). Consequently, there is no clearly established federal law that introduction of hearsay evidence at a sentencing hearing violates a defendant's rights under the Confrontation Clause.

Furthermore, the introduction of the letter written by Petitioner's ex-wife was not "so egregious as to render the entire [sentencing] fundamentally unfair. Howard v. Moore, 131 F.3d 399,

5

415 n. 18 (4th Cir. 1997). Judge Doughton expressly stated that he would "look at' the letter for impeachment purposes only. The letter was not admitted at trial for consideration by a jury, perhaps unskilled at distinguishing the admission of evidence as proof of guilt and the admission of evidence for the limited purposes of impeachment. Rather, it was admitted at sentencing for consideration by a judge, who, unlike a jury, is well versed in the proper scope of impeachment evidence, and who can distinguish competent evidence from incompetent evidence. Moreover, there is no indication that Judge Doughton discredited Petitioner's testimony based upon the letter, much less predicated his sentence on its contents. The State did not reference the letter or Petitioner's credibility in its sentencing argument. In his remarks to Petitioner, Judge Doughton in no way indicated that Petitioner's sentence was based, in whole or in part, on anything in the letter. In fact, Judge Doughton never mentioned Petitioner's credibility, the letter, or Petitioner's ex-wife. Rather, Judge Doughton expressly stated that the sentence was imposed with due consideration given to the victims. (Sentencing Transcript at 155-158.) Judge Doughton sentenced Petitioner to the presumptive sentencing terms for the crimes to which he pled guilty, whereby Petitioner received the very same sentence imposed at his 1989 sentencing hearing at which his ex-wife's letter was not introduced.[4] Petitioner has not presented evidence establishing that the introduction at his sentencing hearing of a letter written by his ex-wife rendered his sentencing hearing fundamentally unfair,

    Moreover, Petitioner raised this claim in his MAR. In adjudicating the merits of Petitioner's claim in his MAR, the MAR court denied relief based on the following conclusions:

    2.    Formal rules of evidence do not apply at a sentencing hearing. See N.C.G.S. 15A-1334(b) and N.C.G.S. 8C, Rule 1101(b)(3)).

---

[4] Petitioner was sentenced and resentenced under North Carolina's Fair Sentencing Act, now repealed. N.C.G.S. §§ 15A-1340.1 to 15A-1340.7 (repealed 1993).

3. Sworn testimony, which may include reliable hearsay, may be included in information used to determine a factual basis for entry of a plea of guilty. See N.C.G.S. 15A-1022(c)(4).
4. The evidence to which objection has made was properly received by the sentencing court for a limited purpose. Receipt of the evidence did not result in aggravation of the sentences.
5. Although formal rules of evidence did not apply, the sentencing hearing was fair and just, and the defendant was given the opportunity to contest all evidence presented to show aggravating factors and to present evidence of mitigating factors.
6. Defendant has failed to show prejudicial error amounting to a denial of some substantial right, abuse of discretion, procedural conduct prejudicial to defendant, or circumstances that manifest inherent unfairness and injustice, or conduct which offended a sense of fair play.
7. The Court concludes as law that Constitutional rights were not violated by the statutory provisions in 15A-1334(b), or the application of any rule of evidence, in consideration of the "Anna Lingle fax statement" by the sentencing judge. This determination is based on the manner in which the plea and sentencing hearing was conducted, and the careful consideration given by Judge Doughton to all presentations on behalf of both the State and Defendant, and on the fact that no aggravation of any sentence imposed resulted from the hearing. The Defendant has had a full and fair consideration of the merits of the ground asserted.

(MAR Order, January 26, 2005.)

This decision of the MAR court is correct. It is not contrary to, nor does it involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court, i.e Estelle.[5] See Early v. Packer, 537 U.S. 3, 8 (2002) (providing that state court need not cite or even be aware of United States Supreme Court cases in order to obtain deferential standards of review). Nor is the decision based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner's claim that evidence was admitted at his sentencing hearing in violation of the Constitution is denied pursuant to the deferential standards of review contained in 28 U.S.C. § 2254(d) and (e). See Williams v. Taylor, 529 U.S. 362

---

[5] Because there is no clearly established Supreme Court precedent that introduction of hearsay at sentencing violated the Confrontation Clause, the State court MAR Order could not be contrary to Supreme Court precedent.

(2000). There is no requirement that the state court specifically cite United States Supreme Court precedent in its order, so long as its ultimate adjudication is not contrary to, nor involves an unreasonable application of clearly established federal law. Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir.)("[T]he phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion.", cert. denied, 119 S.Ct (1999). Petitioner's claim is without merit and is also denied pursuant to § 2254(d) and (e).

## IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is Denied and Dismissed. The State's Motion for Summary Judgment (Document No. 3) is Granted.

**SO ORDERED.**

Signed: December 4, 2007

Richard L. Voorhees
United States District Judge